12/5/2016 2:30:08 PM
Chris Daniel - District Clerk Harris County
Envelope No. 14106087
By: Nelson Cuero
Filed: 12/5/2016 2:30:08 PM

# 2016-83586 / Court: 215

### CAUSE NO. _____

| | | |
|---|---|---|
| **MAGDIEL MARQUEZ- GARCIA,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **MARK RICHARD MAHER and** | § | |
| **WERNER ENTERPRISES, INC.,** | § | |
| *Defendants* | § | **_____th JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

TO THE HONORABLE COURT:

COMES NOW Plaintiff MAGDIEL MARQUEZ-GARCIA (hereafter referred to as "Plaintiff") in the above-entitled and numbered cause complaining of and against Defendants MARK RICHARD MAHER ("Defendant MAHER") and WERNER ENTERPRISES, INC. ("Defendant WERNER") (hereafter collectively referred to as "Defendants") and for cause of action would respectfully show the following:

### I.
### DISCOVERY LEVEL

Pursuant to TEX. R. CIV. P. 190.1, Plaintiff intends to conduct discovery in this case under Level 3 as proscribed by TEX. R. CIV. P. 190.4. Presently, the full extent of Plaintiff's injuries is not known. At the time of filing this lawsuit, Plaintiff seeks monetary relief "over $1,000,000" in accordance with TEX. R. CIV. P. 47(c)(3). Plaintiff reserves the right to amend this petition, including this provision, as the case continues.

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories Requests for Production, and Requests for Admission*



## II.
## PARTIES AND SERVICE OF CITATION

Plaintiff MAGDIEL GARCIA MARQUEZ resided in Fort Bend County, Texas at the time of the events which form the basis of this lawsuit.

Defendant MARK RICHARD MAHER is an individual whose last known address is 3704 Greensboro Drive, Eagan, Minnesota, 55123.  Plaintiff requests that citation be issued.  Service will be effected via PRIVATE PROCESS SERVER.

Defendant WERNER ENTERPRISES, INC. is a foreign corporation who may be served with process through its registered agent in Texas, John Vidaurri, 8601 Peterbilt Avenue, Dallas, Texas 75241.

Defendant WERNER engaged in business in the State of Texas by allowing its employee, agent, or servant to operate a motor vehicle on the roads and highways of the State of Texas.  In so doing, he collided with Plaintiff's vehicle while operating Defendant WERNER's vehicle.

Plaintiff requests that citation be issued.  Service will be effected via PRIVATE PROCESS SERVER.

## III.
## JURISDICTION & VENUE

This suit is brought in accordance with the laws of the State of Texas for the recovery of damages which are in excess of the minimal jurisdictional limits of this Court to which Plaintiff is entitled to receive as compensation for the injuries described below. Accordingly, this Court has jurisdiction over this matter and Harris County is the proper venue per TEX. CIV. PRAC. & REM. CODE § 15.002(b).

Certified Document Number: 72963332 - Page 2 of 36

## IV.
## FACTUAL BACKGROUND

Plaintiff brings this suit to recover damages for personal injuries and property damage sustained as a result of an incident that occurred on or about May 19, 2016 in Comal County, Texas. Said incident was proximately caused by the negligence of Defendants.

At the time of the occasion in question, Plaintiff had stopped at the Travel Centers of America truck stop located at 4817 I-35 North in New Braunfels, Comal County, Texas.  Plaintiff was traveling from Dallas, Texas to San Antonio, Texas, had stopped to rest, and was sleeping in the back of the trailer.

Defendant MAHER the operator of the vehicle provided to him by Defendant WERNER was driving his tractor-trailer through the truck stop parking lot.  While attempting to reverse into a parking spot next to the Plaintiff's vehicle, Defendant MAHER made an extremely wide and improper turn then violently struck the front of the Plaintiff's vehicle. Due to the negligent manner in which Defendant operated the tractor-trailer, Defendant could not stop, and violently crashed into Plaintiff's vehicle.

Defendant MAHER forcefully struck Plaintiff's vehicle inflicting severe personal injuries and damages.

## V.
## STATUTORY EMPLOYEE

At all times material to this cause of action, Defendant MAHER was for all purposes a statutory employee of Defendant WERNER as contemplated by the both the Federal Motor Carrier Safety Responsibility Act (FMCSR) and Texas statute. An

Certified Document Number: 72963332 - Page 3 of 36

employer, as defined by FMSCR, "means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business...." 49 C.F.R. § 390.5 (1997).  Texas has incorporated, by reference, Parts 382, 385, 386, 390-393, and 395-395 of the Federal Motor Carrier Safety Regulations. *See* 37 TEX. ADMIN. CODE § 3.62(a) (1996) ("The director of the Texas Department of Public Safety incorporates, by reference, the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations, Parts 382, 385, 386, 390-393, and 395-397 including amendments and interpretations thereto.") Defendant WERNER is thereby vicariously liable for the negligent actions of Defendant MAHER. *Morris v. JTM Materials*, 78 S.W.3d 28 (Tex. App- Fort Worth 2002, no pet.).

## VI.
### *RESPONDEAT SUPERIOR*

At all times material hereto, Defendant MAHER was acting within the course and scope of his employment and/or official duties with Defendant WERNER.

Furthermore, at all times material hereto, Defendant MAHER was acting in furtherance of the duties of his office and/or employment with Defendant WERNER.

Therefore, Defendant WERNER is responsible for all damages resulting from the negligent acts and/or omissions of Defendant MAHER pursuant to the doctrine of *respondeat superior*.

## VII.
### NEGLIGENCE

Plaintiff alleges that on the occasion in question, Defendant MAHER failed to use ordinary care by various acts and omissions in at least the following ways:

a.  Failing to keep the tractor-trailer within a safe distance;

b.  Failing to use the tractor trailer's horn to warn other drivers;

c.  Failing to keep a proper lookout;

d.  Failing to use due caution;

e.  Failing to properly and/or safely slow the tractor-trailer;

f.  Failing to properly and/or safely stop the tractor-trailer;

g.  Failing to properly operate the tractor-trailer; and

h.  Causing a collision of vehicles resulting in personal injuries.

Each and all of the above-stated acts and/or omissions constitute negligence and the same are a proximate cause of the injuries and damages sustained by Plaintiff.

## VIII.
## NEGLIGENCE PER SE

Moreover, Plaintiff would show that, at the time of the collision in question, Defendants violated the TEXAS TRANSPORTATION CODE in at least one or more of the following ways:

a.  Failing to control speed or traveling at an unsafe speed, a violation of § 545.351;

b.  Failing to keep the vehicle within proper distance from vehicles ahead or behind, a violation of § 545.062;

c.  Failing to maintain brakes in good working order, a violation of § 547.402(d); and

d.  Reckless driving, a violation of § 545.401(a) and (c)(2).

At all times material to this cause of action, Plaintiff belonged to that class of persons for whom said statutes were enacted to protect. Defendants' failure to adhere to the non-

Certified Document Number: 72963332 - Page 5 of 36

conditional standards set forth by said statutes and/or regulations constitutes negligence *per se*. Each and all of the above-stated acts and/or omissions are a direct and proximate cause of the injuries and damages sustained by Plaintiff.

**IX.**
**NEGLIGENT ENTRUSTMENT**

Plaintiff further alleges that, on or about the occasion in question, Defendant WERNER owned the vehicle that was operated by Defendant MAHER. Defendant MAHER was in possession of said vehicle with the express consent of Defendant WERNER.

Defendant WERNER entrusted its vehicle to Defendant MAHER for the purpose of operating it, and Defendant MAHER operated it with the knowledge, consent, and permission of Defendant WERNER. At such time, Defendant MAHER was reckless and therefore unfit to safely operate a motor vehicle. Defendant WERNER knew or should have known, in the exercise of due care, that Defendant MAHER was reckless, incompetent, and therefore an unfit driver who would create an unreasonable risk of danger to persons and property.

Plaintiff also alleges that, upon the occasion in question, Defendant WERNER was negligent for failing to use ordinary care by various acts and omissions in at least the following ways:

a.      Knowingly and negligently entrusting its vehicle to a reckless, incompetent, and/or unfit driver;

b.      Failing to use reasonable care in recruiting and selecting employees;

Certified Document Number: 72963332 - Page 6 of 36

c.    Failing to use reasonable care in the re-training and/or termination of incompetent, careless, or reckless employees;

d.    Failing to use reasonable care in training employees; and,

e.    Failing to use reasonable care in monitoring and supervising the conduct of employees.

Each and all of the above-stated acts and/or omissions constitute negligence and the same are a direct and proximate cause of the injuries and damages sustained by Plaintiff.

## X.
## GROSS NEGLIGENCE

At the time of the incident, Defendant MAHER was operating Defendant WERNER's tractor-trailer with reckless disregard for the rights of others which was the result of conscious indifference to the rights, welfare, and safety of other motorists, pedestrians, and other persons. The gross negligence of Defendants was a proximate cause of the damages suffered by Plaintiff.  Therefore, Plaintiff is entitled to recover punitive damages.

## XI.
## DAMAGES

Plaintiff would show that, as a direct and proximate result of the above-mentioned collision, Plaintiff has suffered injuries and damages.  Plaintiff has experienced damages including, but not limited to, the following:

a.    Physical pain and suffering in the past and future;

b.    Loss of earning capacity in the past and future;

c.    Medical expenses in the past and future;

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories* *Page 7*
*Requests for Production, and Requests for Admission*

d.      Physical impairment in the past and future; and

e.      Physical disfigurement in the past and future.

Plaintiff has experienced damages including, but not limited to, the following:

a.      Past Pecuniary Loss;

b.      Future Pecuniary Loss;

c.      Past Mental Anguish; and,

d.      Future Mental Anguish.

As required by TEX. R. CIV. P. 47, Plaintiff affirms that "the damages sought are within the jurisdictional limits of the Court." In addition, at the time of filing this Petition, Plaintiff seeks "monetary relief over $1,000,000." Plaintiff specifically reserves the right provided by the TEXAS RULES OF CIVIL PROCEDURE to amend and/or supplement this pleading.

## XII.
## PUNITIVE AND EXEMPLARY DAMAGES

Plaintiff will further show that the conduct on the part of Defendants was willful and wanton, intentional, done with reckless disregard for the rights of others, and constitutes gross negligence. As a result, Plaintiff is entitled to recover punitive and exemplary damages in addition to actual damages.

## XIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer herein and that on final hearing Plaintiff has judgment against Defendants for an amount within the jurisdictional limits of this Court together with pre-judgment and post-

Certified Document Number: 72963332 - Page 8 of 36

judgment interest as provided by law, costs of court, and for such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

## XIV.
## REQUESTS FOR DISCLOSURE

Pursuant to TEX. R. CIV. P. 194, you are requested to disclose the information or material described in TEX. R. CIV. P. 194.2 within fifty (50) days of service of same.

## XV.
## RULE 193.7
## NOTICE OF INTENT TO USE DISCOVERY DOCUMENTS

Pursuant to TEX. R. CIV. P. 193.7, Defendants are hereby notified that Plaintiffs reserve the right to use any and all documents Defendants produce in response to any discovery requests in all pretrial proceedings and at the time of trial.

## XVI.
## DEFINITIONS

Plaintiffs set forth the following definitions or abbreviations of various words and phrases contained in the Interrogatories, Requests for Production, and Requests for Admission. Plaintiffs provide the following definitions and abbreviations to clarify the meaning of various words and phrases contained herein to expedite discovery, i.e. (1) to help the Defendants fully and accurately understand the objectives of Plaintiffs' discovery efforts and (2) to simplify and assist the Plaintiffs in Plaintiffs' efforts to locate and furnish the relevant information and documents. Plaintiffs expressly stipulate and agree that an affirmative response on the part of Defendants will not be construed as an admission that any definition or abbreviation contained hereto is either factually correct or legally binding on Defendant.

Certified Document Number: 72963332 - Page 9 of 36

A. **DEFENDANT OR DEFENDANTS:** As used herein, the term "Defendant" or "Defendants" means the named Defendants answering these requests as well as his/its/their attorneys, agents, employees, representatives, and all other natural persons or business or legal entities acting, or purporting to act, for or on your behalf whether authorized to do so or not.

B. **EMPLOYER** refers to Defendant WERNER, its departments, agencies, and subdivisions, employees, drivers, independent contractors, owner operators, trip lessors and their attorneys, investigators, brokers, agents, or any other representatives. This includes Defendant MAHER hereafter sometimes referred to as **"DRIVER."**

C. **MULTIPLE PART ANSWERS:** When an individual Interrogatory calls for an answer that involves more than one part or subpart, each part of the answer should be set forth separately so that it is clearly understandable and responsive to the respective Interrogatory or subpart thereof.

D. **YOU OR YOUR:** When the terms "you" or "your" are used in the requests or instructions, it is meant to include the person(s) referenced in definition "A" above, i.e. the named Defendants responding to these requests, as well as his/its/their attorneys, agents, employees, representatives, and all other natural persons or business or legal entities acting, or purporting to act, for or on your behalf whether authorized to do so or not.

E. **WRITING OR WRITTEN:** The terms "writing" or "written" are intended to include, but not necessarily be limited to, the following: hand writing, type writing, computer printouts, printing, photograph, and every other means of recording upon any tangible thing or any form of communication including letters, words, pictures, sounds or symbols or combinations thereof; and they further include any oral communication later reduced to writing or confirmed by a letter.

F. **DOCUMENT(S):** The term "documents" shall mean writings of every type and from any source, including originals and non-identical copies thereof, that are in your possession, custody, or control or known by you to exist. This would include documents sent outside your organization to any source as well as documents intended for internal use.

The term also includes communications not only in words, but also in symbols, pictures, sound recordings, film, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems. If the information is kept in a computer or informational retrieval

Certified Document Number: 72963332 - Page 10 of 36

system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

The term includes, but is not limited to, calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate bylaws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memorandum recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegrams, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

G.      **COMPLETE AND CLEARLY READABLE COPIES:** As used herein, the phrase "complete and clearly readable copies" means copies that are not reduced in size, unless the document being copied exceeds the size of normally available copy paper and is a complete copy of the document clearly readable to the average person. Plaintiffs requests that each document that is reproduced by copy methods to satisfy this request be reproduced on one page (one document per page), separate and apart from all other documents produced. If the copies reproduced to satisfy any request herein are not clearly readable, Plaintiffs request the originals be produced for purposes of viewing and copying by the Plaintiffs. The originals will be timely returned to the producing Defendants.

H.      **PHOTOGRAPH:** "Photograph" means and includes any motion picture, still picture, transparency, videotape, drawing, sketch, electronic image, negatives or any other recording of any non-verbal communication in tangible form.

I.      **PERSON:** "Person" as used herein means an individual, corporation, partnership, association, trust, governmental entity, and any otherwise described entity.

J.      **PERSON(S) IDENTITY:** When an Interrogatory requests that you identify a person please state:

1.      His or her full name;

2.      His or her present or last known address;

3.      His or her present employer's name and address; and

Certified Document Number: 72963332 - Page 11 of 36

      4.      His or her occupational position or classification.

**K.**     **CUSTODIAN**: "Custodian" means the person or entity with care, custody, or control of the item or document that is the subject of inquiry. A request to identify the Custodian of any item or document is a request to provide the name, address, and telephone number of said Custodian.

**L.**     **IDENTIFY or IDENTIFICATION:**

      1.      As to a person: When used in reference to a person or individual, the terms "identify" or "identification" mean to state his/her full name, address, and telephone number.

      2.      As to an entity: The terms "identify" or identification" when used in reference to an entity such as a corporation, partnership or association mean to state the name of the entity, its business address, telephone number, the name of its chief executive officer, and the agent for service of process.

      3.      As to a document: When used in reference to a document, the terms "identify" or "identification" shall include the following:

            a.      The title, heading or caption of such document.

            b.      The date appearing on such document or, if no date appears, the approximate date on which the document was prepared.

            c.      A general description of the document.

            d.      The name of the person who signed the document or statement that it was unsigned.

            e.      Name of the person or persons who prepared the document.

            g.      Name of the person or persons to whom the document was addressed and to whom the document was sent.

            h.      The physical location of the document.

      4.      As to a statement: When used in reference to a statement, the terms "identify" or "identification" shall include:

Certified Document Number: 72963332 - Page 12 of 36

a.   who made the statement;

b.   who took or recorded it;

c.   all others, if any, present during the making thereof

d.   a statement as to when, where, and how it was taken or recorded;

e.   the identify of who was present; and

f.   the last known possession, custody or control thereof.

5.   To any other tangible thing:  When used in reference to any other tangible thing, the terms "identify" or "identification" mean:

a.   to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made;

b.   to identify who made it; and

c.   to identify who has present or last known possession, custody, or control thereof.

**M.   COLLISION IN QUESTION:**  The term "Collision" or "collision in question" or similar reference as used herein refers to the Collision or collision in question described in Plaintiffs' Original Petition, unless otherwise defined herein, that forms the subject matter of this lawsuit.

**N.   INCIDENT IN QUESTION:** The term "Incident" or "collision in question" or similar reference as used herein refers to the Collision or collision in question described in Plaintiffs' Original Petition, unless otherwise defined herein, and that forms the subject matter of this lawsuit.

**O.   ACCIDENT FILES AND RECORDS:** The term "Accident Files and Records" as used herein is intended to have broad reference to all forms of recorded information, including writings and recordings as defined in TEX. R. EVID. 1001, and includes written or recorded statements, reports, memorandums, correspondence, maps, diagrams, pictures, blueprints, plats, and other related objects and documents inclusive of any documents, letters to or from or records and reports required from the Defendants by other organizations, state, and/ or federal governmental agencies.

Certified Document Number: 72963332 - Page 13 of 36

P.   **STATEMENTS:**  The term "statements" includes any written or graphic statement signed or otherwise adopted or approved by the person making it and any stenographic, mechanical, electrical, or other recordings, or a transcription thereof, that is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

Q.   **VEHICLE IN QUESTION:**  The terms "vehicle" or "vehicle in question" means the vehicle driven by Defendant MAHER at the time of the collision in question.

R.   **DRIVER:** As used herein, the term "Driver or Drivers" means any person employed, or contracted for or with, by Defendant WERNER including persons known as co-drivers, independent contractors, owner operators or trip lessors and includes persons furnished to Defendant WERNER as drivers by any other person or organization who perform driving services for or on behalf of Defendant WERNER. Note, this pertains only to the vehicle involved in the collision made the basis of this suit.

S.   **DRIVER'S QUALIFICATION FILE:** As used herein, the term "Driver's Qualification File" means those records specifically required to created and maintained by EMPLOYER on any driver who performs services or work for or on behalf of EMPLOYER.

T.   **DRIVER'S PERSONNEL FILE:** The term "Driver's Personnel File", as used herein, means any and all files, records, communications or documents created by a driver, EMPLOYER or any other person or organization that contains documents directed to, received from or about a driver.

U.   **TRIP - OPERATIONAL DOCUMENTS:** The term "trip" as used herein includes travel from a point of origin to a point of destination and return to the point of origin including all stops in conjunction therewith.

The meaning of the term "Operational Documents" as used herein applies to the records generated for each trip made by DRIVER during the time period requested.

V.   **HOURS OF SERVICE RECORDS:** As used herein, the term "Hours of Service Records" means any and all documents created by DRIVER including, but not limited to, driver's record of duty status or drivers' daily logs, time worked cards or other time worked records or summaries, EMPLOYER's administrative driver's record of duty status or log audits or summaries along with any records or reports of violations. This specifically includes all advice, reprimands, or warnings given or sent to DRIVER created by or on behalf of EMPLOYER.

W.   **MAINTENANCE FILES AND RECORDS:** As used herein, the term "Maintenance Files and Records" means those documents required to be

Certified Document Number: 72963332 - Page 14 of 36

created and/or maintained by EMPLOYER including, but not limited to, all daily condition reports, all systematic and annual inspections, work or repair orders, list of add-ons and/or take-offs of equipment parts and accessories, accounting records, bills, or notes of repairs or maintenance and all summary type maintenance documents prepared by EMPLOYER or other agencies or organizations, inclusive of any summary or computer-generated type systematic lubrication, inspection and maintenance records and documents in the possession of any of the Defendants on VEHICLE IN QUESTION. This definition specifically includes any and all driver daily condition reports created by any driver and maintenance files and records maintained by and in the possession of any other person or organization performing maintenance services for or on behalf of any of the Defendants applicable to the time period requested.

## XVII.
## INTERROGATORIES

Pursuant to TEX. R. CIV. P.197, you are requested to answer the following Interrogatories within fifty (50) days of service of this request.

### Preliminary Statement

1.      The following interrogatories are to be answered separately and fully, by furnishing all information in your possession, custody or control, including all information to which you have a superior right to compel from a third party, such as your agent, authority, or representative.

2.      You are to answer the interrogatories under oath. Your attorney in this case is not allowed to sign or swear to the answers you have made to the interrogatories.

3.      You and your attorney are under a duty to supplement your answers to these interrogatories by amending your answers if you obtain information upon the basis of which you know that the answer was incorrect when made or you know that the answer is no longer true, even though it was correct when made.

4.      Whenever an interrogatory requests the identification of a document or documents, please set forth where the document exists, the name and address of its custodian, a description of its contents, including its author, date, and addresses, the number of pages it contains, and all attachments to the original document.

5.      If the answer to any interrogatory may be derived or ascertained from your business records, and the burden of deriving the answer would be substantially the same

Certified Document Number: 72963332 - Page 15 of 36

for Plaintiffs and you, you may specify the records from which the answer may be obtained.

## Interrogatories

1.     For Defendant MAHER state his full and complete name, any nicknames he has used, or been known by, date of birth, social security number, his present home address, telephone number and, if different, his complete home address and telephone number at the time of the collision in question.

2.     For Defendant WERNER, is Defendant incorporated under the laws of any state or foreign country or is the Defendant's organization (company, corporation etc.) a wholly owned subsidiary of another legal entity? If so, please state the name and address of the legal entity and the following information:

   a.     The state and/or county of registration;

   b.     The address of its principal place of business or registered office;

   c.     The date of commencement of business by the corporation;

   d.     The business in which it is authorized to engage; and

   e.     Legal status.

3.     Please identify and describe every step, means, and action taken by Defendant MAHER to warn, alert, or notify drivers approaching on the roadway of the presence and location of the both the tractor and trailer at the time of the incident made the basis of this cause of action, including, but not limited to the specific location and placement of any such notice or warning.

4.     Please state the complete name, address and telephone number of Defendant MAHER's present employer indicating the date of employment, present job position, and description.

5.     Did Defendant MAHER and/or Defendant WERNER make a report in writing to any other person or organization in reference to the collision in question?  If so, please state:

   a.     The identity of the person preparing each such report;

   b.     The identity of the person(s) or organization(s) for which the report(s) were prepared; and

Certified Document Number: 72963332 - Page 16 of 36

c.     The identity of the present custodian of copies of each such report.

6.     At the time the collision in question occurred, was Defendant MAHER employed? If so, please state the following as to such employment:

   a.     The identity of each employer including their complete name(s) and address(es);

   b.     The identity of the person who was Defendant MAHER's immediate supervisor in reference to services you performed;

   c.     The beginning and ending dates of Defendant MAHER's employment or present status of employment; and

   d.     What Defendant MAHER's job position and duties were with respect to each employment.

7.     Please list each state that has issued Defendant MAHER a motor vehicle driver's license in the last ten (10) years including those licenses that may have now expired or been canceled, withdrawn, suspended, surrendered, or revoked listing the name of each issuing state and the approximate date of issuance and status for each license held.

8.     If Defendant MAHER has entered a guilty plea to any offense or has been convicted of a felony or a crime involving moral turpitude within the last ten (10) years, identify any such offense or crime by its nature, date of the guilty plea or conviction, penalty assessed, and the county and state wherein the offense or crime occurred.

9.     Please state each and every address where Defendant MAHER has resided in the last ten (10) years, setting forth the approximate dates of your residence at each such address.

10.    List all traffic violations for which Defendant MAHER has been cited during the past seven (7) years, including the date, city, county, state, offense alleged, and disposition of each such citation.

11.    List all motor vehicle collisions in which Defendant MAHER has been involved in the past seven (7) years, including the location, city, county, state, and any violations for which you were cited.

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories*     *Page 17*
*Requests for Production, and Requests for Admission*

Certified Document Number: 72963332 - Page 17 of 36

12. Please state the name, address, and telephone number of any expert(s) with whom you or your attorneys have consulted, but whom you do not intend to call as an expert witness in this case or whom you have not decided to call as an expert witness in this case, but whose opinion(s) and/or impression(s) have been reviewed by any expert who is to be called as a witness at the trial of this case.

13. Identify by name and amount all intoxicating beverages, drugs, alcohol, and/or medications, prescription or otherwise, that Defendant MAHER had taken or consumed within (24) twenty-four hours prior to the collision in question.

14. Describe in your own words how the collision in question occurred and state specifically and in detail what the claim or contention of the Defendants will be regarding any cause or contributing cause of the collision, including a statement in detail of the facts or information upon which this contention is based.

15. If you contend Plaintiffs' acts or omissions caused or contributed to the collision in question, or to their injuries, please describe the basis for your position, including any evidence or statements that support your position.

16. For Defendant WERNER, please state the name, title, and present or last known address of the person employed by Defendant WERNER who was in charge of WERNER's Driver Safety Program on May 19, 2016.

17. State the exact location on or about the roadway of the vehicle at all times material to the collision in question, including specifically the tractor and trailer's location at the time of impact, and if any of the tractor or trailer's lights were engaged immediately prior to and at the time of impact.

18. Identify by cause number, style, court, county, and state each lawsuit to which you have ever been a party, other than this lawsuit.

19. Give the dates, times and places together with the names and addresses of persons and organizations who have provided drug or alcohol counseling or treatment, marriage counseling, or personal counseling to Defendant MAHER in the past ten (10) years.

20. Specify all mechanical or other defects, if any, of the vehicle Defendant MAHER was driving which caused or contributed to the collision made the basis of this suit, including, but not limited to, all components of the vehicle which were inoperable, defective or otherwise in need of repair.

21. State where Defendant MAHER had been during the seven (7) days immediately prior to the collision, where Defendant MAHER was going at the time of the

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories*                    *Page 18*
*Requests for Production, and Requests for Admission*

collision, and the purpose of the trip that Defendant MAHER was on at the time of the collision made the basis of this suit, identifying as part of your answer the time, date, purpose, and duration of every stop made during the specified time.

## XVIII.
## REQUESTS FOR PRODUCTION

Pursuant to TEX. R. CIV. P.196, you are requested to produce the following information within fifty (50) days of service of this request. Demand is hereby made for supplementation of the Defendants' responses to this Request for Production as required by TEX. R. CIV. P.193.5.

### Preliminary Statements

1.     If a requested document once was but is no longer in the possession, custody or control of Defendants or any of its representatives, state what disposition was made of such document.

2.     If any of these requests cannot be responded to in full, please respond to the extent possible, specifying the reason for Defendant's inability to fully respond, and stating whatever information or knowledge Defendants have concerning the portion to which Defendants cannot fully respond.

3.     Pursuant to *Overall v. Southwestern Lee Yellow Pages*, a party is required to send the documents to the requesting party along with a copy of the response. Unless there are thousands of documents, a party is not permitted to merely make documents available at a specific location. 869 S.W.2d 629 (Tex. App.–Houston [14th Dist.] 1994).

4.     You are not asked to divulge or provide any information or documents which are privileged in nature. However, for each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim or privilege or other ground for exclusion.

### Requests for Production

1.     Complete and clearly readable copies of all trip and/or operational documents (see Definition "H") pertaining to the movement of cargo by DRIVER and/or any of his accompanying co-driver(s), or driver trainers from 30 days before the collision in question through the delivery date and time of the cargo he may have been

Certified Document Number: 72963332 - Page 19 of 36

transporting at the time the collision occurred.  Please refer to the following sub-Definitions "H-1 through H-17" and follow them closely grouping and identifying all documents produced by each trip occurring during the time period requested:

H-1.   Complete and clearly readable copies of DRIVER's trip reports and/or trip envelopes, daily loads delivered or picked up reports or any otherwise described work reports, work schedule reports, fuel purchased reports, or any reports made by DRIVER to EMPLOYER, inclusive of daily, weekly, or monthly cargo transported, time and/or distance traveled reports or work records excluding only those documents known as "driver's daily logs or driver's record of duty status".

H-2.   Complete and clearly readable copies of all receipts for any trip expenses or purchases made by DRIVER or his co-driver during a trip regardless of type of purchase, such as fuel, weighing of vehicles, food, lodging, equipment maintenance, repair or equipment cleaning, special or oversize permits, bridge and/or toll roads, loading or unloading cost, and all otherwise described receipts regardless of the type of objects or services purchased.

H-3.   Complete and clearly readable copies of all cargo pickup or delivery documents prepared by any of the Defendants, transportation brokers, involved shippers or receivers, motor carriers operations/dispatch personnel, drivers, or other persons or organizations relative to the cargo transported and the operations of DRIVER.

H-4.   Complete and clearly readable copies of any and all written requests, letters, memoranda, instructions, or orders for transportation of cargo prepared by Defendants, transportation brokers, involved shippers or receivers, motor carriers operations/dispatch or sales personnel, drivers or other persons or organizations relative to the operations and cargo transported by DRIVER.

H-5.   Complete and clearly readable copies of all bills of lading and/or cargo manifest prepared or issued by any shippers, brokers, transporting motor carriers personnel, receivers of cargo or any of the Defendants. This specifically includes readable and complete copies of bills of lading, manifest, or other documents regardless of form or description, that show signed receipts for cargo delivered along with any other type of document that may show dates and times of cargo pickup or delivery that are relative to the operations and cargo transported by DRIVER.

H-6.   Complete and clearly readable copies of all equipment or cargo loading, unloading or detention of equipment records along with any other documents showing cargo pickup and/or delivery dates and times or delays and/or detention of equipment relative to the operations of DRIVER.

H-7.   Complete and clearly readable copies of all cargo transported freight bills, Pro's or otherwise described similar documents inclusive of all signed or unsigned cargo pickup and delivery copies that indicate date and/or time of pick up or delivery of cargo by DRIVER or his co-driver(s).

H-8.   Complete and clearly readable copies of all written instructions, orders, or advice given to DRIVER in reference to cargo transported, routes to travel, locations to purchase fuel, cargo pickup or delivery times issued by EMPLOYER, shippers, receivers, or any other persons or organizations.

H-9.   Complete and clearly readable copies of dispatch and/or operational records indicating assignment of equipment and drivers to specific cargo pickup, transportation and delivery, dates and times of pickup and delivery, movement of cargo, shippers and receivers of cargo, and any other related operational records or documents, regardless of form.   This specifically includes all dispatch and operational type computer-generated documents and materials indicating the trips, cargo, movements, or activities of DRIVER.

H-10.   Complete and clearly readable copies of any driver (see Definition "E") call-in records or otherwise described written records indicating any communications between EMPLOYER and DRIVER.

H-11.   Complete and clearly readable copies of all accounting records, merchandise purchased, cargo transportation billings or invoices and subsequent payments or otherwise described records indicating billings for transportation of cargo or payment for services performed for EMPLOYER by DRIVER and/or his co-drivers.

H-12.   Complete and clearly readable copies of all initial or rough driver's (see Definition "E") trip check-in or financial settlement sheets along with all final trip accounting documents, and computer-generated documents or printouts showing expenses and payment(s) for service(s) or salary paid to DRIVER (see Definition "E") in reference to DRIVER's trip(s).   This specifically includes any summary type documents showing all payments made to DRIVER and/or his co-drivers regardless of the purpose of payment or period of time payment was made for.

H-13.   Complete and clearly readable copies of any and all motor carrier or driver (see Definition "E") created trip fuel mileage and purchase reports or records.   This specifically includes all documents and computer-generated documents, regardless of form or subject, received from any source such as the organization known as "Comchek" or generated for or by EMPLOYER showing date, time, and location of fueling or other purchases by DRIVER and/or his co-drivers while on the trips requested herein.

H-14.  Complete and clearly readable copies of all checks or otherwise described negotiable instruments issued to DRIVER or his co-driver(s) (see Definitions "D" and "E") given in payment as trip advances, loans, or for any other purpose inclusive of checks issued for employee payroll, and/or for owner/operator or trip lessors services in the possession of any of the Defendants.  Specifically copies of both the "front and back" of each check and/or Comchek issued to DRIVER, or any of his co-drivers is requested.

H-15.  Complete and clearly readable copies of any and all state fuel or oversize special permits and any related documents or requests issued to or by any state agency to transport cargo over their territories regardless of the form of the permit. The receipt acknowledging payment for the permit(s) issued by any governmental agency is specifically requested that relate to the movements of DRIVER and/or his co-drivers during the requested time period.

H-16.  Complete and clearly readable copies of any and all trip leases or trip lease contracts involving DRIVER and/or his co-drivers along with all related documentation issued to or created or received by any of the Defendants. Specifically, this includes any trip leases negotiated between the Defendants and any other motor carrier or their drivers inclusive of all related documentation thereto. Basically, "related documentation" consists of any documents created or generated in reference to each trip lease(s) and in addition, driver's daily logs or record of duty status, driver's daily condition reports, motor carrier certification of drivers qualification and include other documents that relate to the billing and payment for such movement of freight, along with all other types of documentation regardless of form or description that are relative to each occurrence involving the services and activities of DRIVER and/or his co-drivers, and,

H-17.  Complete and clearly readable copies of any and all other "operational or trip related documents" (see Definition "H") created or received by the Defendants or any other persons or organizations, regardless of form or description and not defined herein, in the possession of any of the Defendants and relative to the operations, activities, movements, cargo and trips accomplished by DRIVER and/or his co-drivers during the time period requested.

2.    Complete and clearly readable copies of the "Driver Qualification File" (see Definition "F") maintained by any of the Defendants on DRIVER along with any other documents contained therein, in their precise state of existence on the date of the collision.  Please refer to the following sub-Definitions "F-1 through F-13" herein and follow them closely:

F-1.    Any pre-employment questionnaires or other documents secured from DRIVER prior to employment.

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories*                   *Page 22*
*Requests for Production, and Requests for Admission*

F-2.    Any and all completed applications for employment secured both before and/or after the actual date of contract or employment of DRIVER.

F-3.    All medical examinations, drug tests, and certification of medical examinations inclusive of expired and non-expired documents relative to DRIVER.

F-4.    All of DRIVER's annual violation statements which should include one for each twelve months of contract or employment with the Defendant motor carrier in this case.

F-5.    All actual driver's motor carrier road tests administered to DRIVER.

F-6.    All actual driver's motor carrier written tests administered to DRIVER.

F-7.    All road and written test certificates issued by EMPLOYER or any other motor carrier or organization to DRIVER regardless of the date issued or the originator of such certificates.

F-8.    All past employment inquiries sent to or secured from former employers along with all responses received from former employers inclusive of all U. S. mail, personal contact, or telephone inquiries and results directed to or received by EMPLOYER from past employers of DRIVER.

F-9.    All inquiries to and answers received from any organization in reference to the driver's license record of traffic violations and automobile collisions directed to and/or received by any of the Defendants, or other organizations on behalf of defendants, from state or federal governmental agencies, or other organizations, relative to DRIVER's traffic and collision record.

F-10.   Copies of all road or written test cards, medical cards, motor carrier certification of driver qualification cards and any other motor carrier transportation related cards in the possession of any of the Defendants regardless of card issuance date or origin.  This specifically includes cards, as previously described herein, issued by other motor carriers to DRIVER or his co-drivers presently in their personal possession.

F-11.   All annual reviews, file reviews or file summaries and related documents found in the driver qualification file of DRIVER.

F-12.   All documents relative to any drug testing of DRIVER.

Certified Document Number: 72963332 - Page 23 of 36

F-13.   Any and all other contents of DRIVER's driver qualification file, regardless of subject, form, purpose, originator, receiver, title, or description.

3.      Complete and clearly readable copies of any and all other documents added to DRIVER's "Driver Qualification File" (see Definition "F") from the date of the collision to the present date as presently maintained by EMPLOYER.  Please identify and produce such documents separate and apart from the documents requested in Request Number 2 herein.

4.      Complete and clearly readable copies of the "Driver Personnel File" (see Definition "G"), and/or any otherwise titled files on DRIVER or in reference to DRIVER's services from initial contract or employment with EMPLOYER to the present date.  Please refer to the following sub-definitions G-1 through G-5 and follow them closely:

G-1.    Applications for employment, owner/operator, or other types of contracts, agreements, payroll or money advanced records, attendance records, computer-generated documents and any other summary type document regardless of subject, description or form relative to DRIVER or the services performed by DRIVER.

G-2.    Hiring, suspension, termination, warning notices, complaints, letters, memorandums, and any other similar type documents relative to DRIVER.

G-3.    Prior industrial, vehicular, cargo, hazardous materials incidents, health or accident reports, or other types of injury, sickness, accidents or loss reports, or records inclusive of cargo shortage or damage reports along with all related documents to each such sickness, incident or accident that relate to DRIVER.

G-4.    FOMCSFO (see Definition "O") or other law enforcement agencies, terminal audits, or roadside equipment and/or driver inspections reports, traffic citations or traffic warnings, inclusive of any of the Defendant's file reviews or summaries of violations of company, state or federal laws, rules or regulations committed by DRIVER.

G-5.    Any and all other documents found in such a file regardless of description, title, form, origin, or subject maintained by the Defendants in reference to DRIVER, excluding only those documents required by the FMCSR Part 391, Driver Qualifications, (see Definition "F") defined in Request #2, sub-definitions "F-1 through F-13" herein.

5.      Complete and clearly readable copies of any state or FMCSA (see Definition "O") issued terminal audits, road equipment and/or driver compliance inspections or warnings and traffic citations issued in reference to the activities of DRIVER, his co-

drivers, or driver trainers, by any city, county, state or federal agency or law enforcement official in the possession of any of the Defendants. This request specifically includes any documents issued by any governmental agencies or officials in reference to violations of any State or Federal Motor Carrier Safety or Hazardous Materials Regulations (see Definitions "M" or "N") that may have been issued in reference to the activities of DRIVER or his co-drivers or driver trainers from January 1, 2009 to the present date.

6.      Complete and clearly readable copies of all objects, photographs, drawings, reports, statements, or otherwise described documents or objects in the possession of any of the Defendants in reference to the accident as defined herein "excluding only" those written documents, materials and objects that can be clearly identified as the work product of the Defendant's attorneys. This specifically includes any and all reports and written or electronically recorded statements made by any of the Defendants to any other person, organization, or governmental entity. Please refer to Definition "C" herein and follow it closely.

7.      Complete and clearly readable copies of any and all other accident or incident files and records (see Definition "C") maintained by any of the Defendants in reference to any other vehicular accident or incident, prior to the occurrence of the collision in question, where DRIVER, his co-driver(s), or driver trainer, was the driver of a vehicle involved in the prior accidents or incidents.

8.      Complete and clearly readable copies of all driver's record of duty status or driver's daily logs and 70/60 hour - 8/7 day summaries (see Definition "K") or otherwise described work time records created by DRIVER and/or any of his co-driver(s) for the period from thirty days before the date of the collision through the date of the collision in accordance with FMCSR Part 395 (see Definitions "M" and "N") in the possession of any of the Defendants.

9.      Complete and clearly readable copies of any and all EMPLOYER officers, executives, or administrator's notices, directives, bulletins, publications, and manuals of any type or otherwise described written instructions in reference to the day-to-day motor carrier operating and safety procedures to be followed by their company personnel, managers, supervisors, dispatchers, and drivers. Specifically, any document relative to disciplinary policies, procedures, or warnings for parking, standing, stopping, mechanical failure, motor fleet safety, or failure to comply with the FMCSR (see Definitions "M" and "N") in existence and effective at EMPLOYER on the date of the collision.

10.     Complete and clearly readable copies of all maintenance files and records (see Definition "L") from January 1, 2010 through DOL maintained by any of the Defendants in accordance with the FMCSR/TXMCSR, Part 396 (see Definitions "M"

and "N") on the Tractor (see Definition "I") involved in the collision inclusive of any inspections, repairs, or maintenance done to the Tractor.  In addition, all driver daily vehicle condition reports submitted by any driver(s) on the Tractor, from thirty days before the date of the collision through the date of the collision in the possession of any of the Defendants.  This specifically includes all the driver daily vehicle condition reports, maintenance files and records maintained by any other person(s) or organization(s) that DRIVER or EMPLOYER may have borrowed, rented, or leased the Tractor from or who performed maintenance services on behalf of or for EMPLOYER or DRIVER.

11.   Complete and clearly readable copies of the maintenance files and records (see Definition "L") created from January 1, 2009 through the date of the collision maintained by any of the Defendants in accordance with the FMCSR/TXMCSR, Part 396 (see Definitions "M" and "N") on the Trailer (see Definition "J") pulled by DRIVER inclusive of any documents indicating inspections, repairs, or maintenance to the Trailer.  In addition, all driver daily vehicle condition reports submitted by any driver(s), from thirty days before the date of the collision through the date of the collision in the possession of any of the Defendants.  This specifically includes all the driver daily condition reports, maintenance files, and records maintained by any other organization that DRIVER or EMPLOYER may have borrowed, rented, or leased the Trailer from or who performed maintenance services for or on behalf of EMPLOYER or DRIVER.

12.   Any and all photographs or other electronic images that contain images of the underlying facts or that Defendants intend to offer into evidence at trial.

13.   Any and all photographs or other electronic images that contain images of the underlying facts or that Defendants intend to offer into evidence at trial.

14.   Any and all photographs, movies, videotapes, or other visual reproductions that Defendants have of the parties, persons with knowledge of relevant facts, the facilities, mechanisms or items involved, or scene of the collision in question.

15.   All published documents, treatises, periodicals, or pamphlets on the subject of medicine, collision reconstruction, any engineering field, and any other area of scientific study that you claim to be a reliable authority which may be used by you at trial.

16.   All published documents, treatises, periodicals or pamphlets on the subject of medicine, collision reconstruction, any engineering field, and any other area of scientific study that any testifying expert claims to be a reliable authority which may be used by you at trial.

17.   All published documents, treatises, periodicals, or pamphlets on the subject of medicine, collision reconstruction, any engineering field, and any other area of scientific study that any testifying expert has relied or will rely upon to support their opinions and mental impressions.

18.   All documents, reports, publications, codes and regulations evidencing safety standards, laws, regulations, ordinances, or industry standards which you now contend or will contend at trial support any defensive theory.

19.   All documents, reports, publications, codes, and regulations evidencing safety standards, laws, regulations, ordinances, or industry standards that any of your testifying experts have relied or will rely upon to support their opinions and mental impressions.

20.   All documents, reports, publications, codes, and regulations evidencing safety standards, laws, regulations, ordinances, or industry standards that any of your testifying experts claim to be reliable authority which may be used at the time of trial.

21.   A copy of any contract of employment that would govern Defendants' relationship with any other entity or bear on the issue of "course and scope of employment."

22.   Copies of any and all statements made by Plaintiff concerning the subject matter of this lawsuit including any written statement signed or otherwise adopted or approved by Plaintiff and any stenographic, mechanical, electrical, or other type of recording or any transcription thereof.

23.   Any written, taped, or mechanically reproduced statement made of any Defendant or Plaintiff.

24.   Any and all statements made by Defendants regarding the collision in question to his/her insurance company, its employees, agents, independent contractors, adjusters, or representatives, not including statements made to Defendant's attorney.

25.   Any and all drawings, surveys, plats, maps, or sketches of the scene of the collision in question.

26.   Any document, photographs, or other physical evidence that will be used or offered at trial.

27. All documents and tangible things (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations) that constitute or contain matters relevant to the subject matter of this lawsuit.

28. The entire claim and investigation file including, but not limited to, statements, reports, videotapes, drawings, memoranda, photographs, and documents regarding the collision in question generated or obtained by Defendant, Defendants' agents, or Defendants' insurers in the ordinary course of business.

29. The entire claim and investigation file including, but not limited to, statements, reports, videotapes, drawings, memoranda, photographs, and documents regarding the collision in question generated or obtained by Defendants, Defendants' agents, or Defendants' insurers before Plaintiff filed Plaintiff's Original Petition with the court.

30. Please produce any and all correspondence, communications, letters, notes of oral conversations, and all other documents or writings sent to or received from or exchanged by and between you and your insurance carrier concerning the subject matter of this lawsuit, including, but not limited to, any damage to you, the vehicle in which you were riding, damage to any personal property, and any personal injuries.

31. All documents, correspondence, memoranda, notes, or e-mails regarding communications between your insurance company and the Plaintiff's insurance company regarding the collision in question and/or Plaintiff.

32. A copy of each primary, umbrella, and excess insurance policy or agreement, including the declarations page, which was in effect at the time of the collision in question including all non-waiver agreements, reservation of rights letters, or other documents or communications regarding any contractual obligations owed by you.

33. A copy of each primary, umbrella, and excess insurance policy or agreement, including the declarations page, which may provide coverage to satisfy all or part of any judgment which may be rendered in this litigation including all non-waiver agreements, reservation of rights letters, or other documents or communications regarding any contractual obligations owed by you.

34. Any documents, reports, photographs, or other written records pertaining to any investigation of the collision in question.

35.   All documents regarding all other claims being currently made against Defendants' insurance policies for the collision in question other than by Plaintiff.

36.   Any and all settlement agreements, deals, contracts, understandings, "Mary Carter" agreements, or compromises between you or your representatives and any other party, potential party, or potential third-party defendant to this suit or its representatives, agents, or insurers regarding any compromise, settlement, apportionment of liability or financial responsibility, contingent or otherwise, or alignment of the parties on any issue with respect to:

   a.   The collision in question;
   b.   Plaintiff's damages;
   c.   The presentation of any testimony;
   d.   Whether or how to conduct any cross-examination;
   e.   The performance of discovery; and/or
   f.   The presentation of any defense, excuse, or inferential rebuttal.

37.   Copies of any document or statement that any witness of Defendants will use or you anticipate may use to refresh his or her memory, either for deposition or trial.

38.   Any and all documents and tangible things whose production has not been requested pursuant to any other item of this request which you intend to offer into evidence at trial.

39.   Any and all documents and tangible things whose production has not been requested pursuant to any other item of this request which you do not intend to offer into evidence at the trial of this case, but which may be used as demonstrative evidence at trial.

40.   Any information relating to any arrest or conviction to be used for impeachment purposes against any party, witness, and/or person with knowledge of relevant facts named in discovery information provided by or to you before trial.  Please include the name of the person convicted, the offense for which he or she was arrested or convicted, the year of such arrest or conviction, the court of such conviction, and the disposition of the case or allegation.

41.   Any and all calendars, journals, diaries, logs, or notes kept by Defendants covering the month of the collision in question.

42.   All documents regarding Plaintiff's employment history, status, performance, or compensation obtained by Defendants via an authorization signed by Plaintiff, subpoena, deposition on written questions, or otherwise.

Certified Document Number: 72963332 - Page 29 of 36

*Plaintiff's Original Petition, Requests for Disclosure, First Set of Interrogatories*   *Page 29*
*Requests for Production, and Requests for Admission*

43.   All documents regarding Plaintiff's medical status, treatment, or history obtained by Defendant via an authorization signed by Plaintiff, subpoena, deposition on written questions, or otherwise.

44.   All documents regarding Plaintiff's financial status, earnings history, and tax payment history obtained by Defendants via an authorization signed by Plaintiffs, subpoena, deposition on written questions, or otherwise.

45.   All documents regarding Plaintiff's claims history obtained by Defendants via an authorization signed by Plaintiff, subpoena, deposition on written questions, or otherwise.

46.   All documents, records, reports, notations, or memoranda regarding Plaintiff from persons or entities that compile claim information including, but not limited to, insurance claims, unemployment claims, social security claims, and worker's compensation claims.

47.   All statements or documents that show the identity of any witness to the collision in question, or any person with knowledge of relevant facts concerning the collision in questions, the events leading up to it, or any damage sustained by Plaintiff.

48.   All documents and tangible things which support your contention that:

      a.   any act or omission on the part of Plaintiff caused or contributed to the collision in question;
      b.   any factor, other than a. above, contributed to or was the sole cause of the collision in question including, but not limited to, acts or omissions of negligence of any other party or parties, or potential third-party Defendants, sudden emergency, unavoidable collision, mechanical defect, or act of God;
      c.   any factor caused or contributed to the Plaintiff's damages including, but not limited to, pre-existing or subsequently existing physical or medical condition or conditions of Plaintiff;
      d.   any or all of the medical expenses incurred by Plaintiff for treatment of injuries allegedly resulting from the collision in question were not reasonable and/or necessary;
      e.   Plaintiff's injuries were not the result of or caused by the collision in question.

49.   Any records or documentation (medical or non-medical) which would indicate that you had alcohol and/or drugs (including prescription or non-prescription,

Certified Document Number: 72963332 - Page 30 of 36

legal or illegal) in your bloodstream or urine at the time or immediately following the collision in question.

50.    Any records or documentation (medical or non-medical) which would indicate that you were a regular user of marijuana within one (1) year preceding the collision in question.

51.    Any records or documentation (medical or non-medical) which would indicate that you were a regular user of any illegal substance within one (1) year preceding the collision in question.

52.    Copies of any and all vehicle registrations and titles, state permits, purchase orders and specifications for the vehicle.

53.    Copies of any and all collision reports for collisions in which the vehicle was involved including the collision in question.

54.    Copies of any and all repair orders, damage estimates, appraisals, and maintenance records for the vehicle for the six (6) months preceding the collision in question through three months after the collision in question.

55.    Copies of Defendant MAHER's current and past driver's licenses, front and back.

56.    Complete and clearly readable copies of any and all created electronic or satellite "Vehicular movement recording documents or records" such as QualComm, HighwayMaster, American Mobile Satellite Corp., **OmniTracs**, or any similar organization's records, along with any Tractor trip recorder computer-generated documents, tachograph charts, computer-generated trip printouts or any otherwise described documents generated by whatever means, in reference to the physical movement and geographical locations at a certain time and date of the Tractor and/or Trailer involved in the collision for the two weeks prior to the collision forming the basis for this suit through two weeks subsequent to the collision forming the basis for this suit (date of collision inclusive). **This request specifically includes Defendant's records from its OmniTracs interactive satellite communications network linking every vehicle in its fleet.**

## XIX.
## REQUESTS FOR ADMISSION

Pursuant to TEX. R. CIV. P. 198, you are requested to answer the following Requests for Admission within fifty (50) days of service of this request.

## Requests for Admission

1.    Admit that the collision in question occurred on May 19, 2016 in Harris County, Texas.

2.    Admit that Defendant MAHER was involved in a collision with the vehicle occupied by Plaintiffs on May 19, 2016.

3.    Admit that you owned the vehicle operated by Defendant MAHER at the time of the collision in question.

4.    Admit that you controlled the vehicle operated by Defendant MAHER at the time of the collision in question.

5.    Admit that you managed the vehicle operated by Defendant MAHER at the time of the collision in question.

6.    Admit that you were responsible for the proper maintenance of the vehicle operated by Defendant MAHER at the time of the collision in question.

7.    Admit that Defendant MAHER failed to maintain a proper distance from other vehicles on the roadway at the time of the collision in question.

8.    Admit that you failed to provide reasonable and competent supervision over Defendant MAHER.

9.    Admit that you failed to provide reasonable and competent supervision over the vehicle in question.

10.    Admit that you failed to properly maintain the vehicle.

11.    Admit that you failed to make necessary safety and maintenance inspections to apprise yourselves of any safety and maintenance issues with the vehicle.

12.    Admit that you failed to maintain the vehicle's brakes in good working order.

13.    Admit that you failed to prudently exercise control over Defendant MAHER.

14.    Admit that you failed to prudently exercise control over the vehicle.

15.    Admit that you failed to keep the vehicle within a proper speed in traffic.

Certified Document Number: 72963332 - Page 32 of 36

16.     Admit that your failure to keep the vehicle within a proper speed in traffic was a cause of the collision in question.

17.     Admit that you failed to use the vehicle's horn to warn other drivers.

18.     Admit that your failure to use the vehicle's horn to warn other drivers was a cause of the collision in question.

19.     Admit that you failed to obey roadway traffic speed signs regulating the movement of traffic.

20.     Admit that your failure to obey roadway traffic speed signs regulating the movement of traffic was a cause of the collision in question.

21.     Admit that you failed to keep a proper lookout.

22.     Admit that your failure to keep a proper lookout was a cause of the collision in question.

23.     Admit that you failed to control the speed of the vehicle.

24.     Admit that your failure to control the speed of the vehicle was a cause of the collision in question.

25.     Admit that you failed to use due caution.

26.     Admit that your failure to use due caution was a proximate cause of the collision in question.

27.     Admit that you failed to exercise ordinary care.

28.     Admit that your failure to exercise ordinary care was a proximate cause of the collision in question.

29.     Admit that you failed to properly and/or safely slow the vehicle.

39.     Admit that your failure to properly and/or safely slow the vehicle was a cause of the collision in question.

40.     Admit that you failed to properly and/or safely stop the vehicle.

41.     Admit that your failure to properly and/or safely stop the vehicle was a cause of the collision in question.

Certified Document Number: 72963332 - Page 33 of 36

42.   Admit that you failed to properly operate the vehicle.

42.   Admit that your failure to properly operate the vehicle was a cause of the collision in question.

43.   Admit that you caused the collision in question which resulted in personal injuries.

44.   Admit that Defendant WERNER monitored Defendant MAHER's driving at the time of the collision in question.

45.   Admit that Defendant WERNER's failed to properly monitor Defendant MAHER's driving at the time of the collision in question.

46.   Admit that Defendant WERNER supervised Defendant MAHER' s driving at the time of the collision in question.

47.   Admit that Defendant WERNER's failure to properly supervise Defendant MAHER's driving at the time of the collision in question was a cause of the collision in question.

48.   Admit that the vehicle was in proper working condition on the day of the collision in question.

49.   Admit that at the time of the collision in question there was no mechanical condition/defect on the vehicle that contributed to cause the collision.

50.   Admit that Defendant MAHER incurred medical expenses as a result of the collision in question.

51.   Admit that Defendant MAHER experienced pain and suffering as a result of the collision in question.

52.   Admit that Defendant WERNER's negligence was a proximate cause of the collision in question.

53.   Admit that Defendant MAHER's negligence was a proximate cause of the collision in question.

54.   Admit that Defendants' negligence resulted in Plaintiff's injuries, pain, suffering, incurred medical expenses, and pecuniary losses.

Certified Document Number: 72963332 - Page 34 of 36

55.   Admit that Defendants' negligence resulted in Plaintiff's injuries, pain, suffering, incurred medical expenses, and pecuniary losses.

56.   Admit that the collision was not a result of a sudden emergency.

57.   Admit that the collision was avoidable.

58.   Admit that Defendant MAHER owed a duty to Plaintiff to operate the vehicle safely.

59.   Admit that Defendant MAHER owed a duty to Plaintiff to operate the vehicle competently.

60.   Admit that Defendant MAHER owed a duty to Plaintiff to avoid operating the vehicle recklessly.

61.   Admit that weather conditions were not a factor contributing to the collision.

62.   Admit that road conditions were not a factor contributing to the collision.

63.   Admit that Plaintiff's actions at the time of the collision were prudent and reasonable.

64.   Admit that Plaintiff committed no act or omission that proximately caused or contributed to the collision in question.

65.   Admit that Defendant MAHER was employed at the time of the collision.

66.   Admit that Defendant MAHER was acting within the course of employment at the time of the collision.

67.   Admit that Defendant MAHER was acting within the scope of employment at the time of the collision.

68.   Admit that Defendant MAHER was acting within the course and scope of employment at the time of the collision.

69.   Admit that Defendant MAHER was employed by Defendant WERNER at the time of the collision.

70.   Admit that Defendant MAHER was acting within the course of employment with Defendant WERNER at the time of the collision.

71.     Admit that Defendant MAHER was acting within the scope of employment with Defendant WERNER at the time of the collision.

72.     Admit that Defendant MAHER was acting within the course and scope of employment with Defendant WERNER at the time of the collision.

73.     Admit that Defendant MAHER was directed by Defendant WERNER's dispatcher at the time of the collision.

74.     Admit that Defendant MAHER was managed by Defendant WERNER's dispatcher at the time of the collision.

75.     Admit that Defendant MAHER was controlled by Defendant WERNER's dispatcher at the time of the collision.

76.     Admit that you had a duty to comply with all applicable safety regulations at the time of the collision in question.

77.     Admit that at all times you complied with all applicable safety regulations at the time of the collision in question.

78.     Admit that you have never violated any safety regulations with which you were required to comply when operating a motor vehicle.

79.     Admit that you have never knowingly violated any safety regulations with which you were required to comply when operating a motor vehicle.

Respectfully submitted,

**SEWELL LAW FIRM, P.C.**

_____*/s/ Efrem D. Sewell*_____
EFREM D. SEWELL
Texas Bar No. 18055200
5909 West Loop South, Suite 620
Bellaire, Texas 77401
Tel. (713) 432-0730
Fax. (713) 432-0748
esewell@sewelllawfirm.com

**ATTORNEY FOR PLAINTIFFS**

Certified Document Number: 72963332 - Page 36 of 36



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 20, 2017

Certified Document Number:        72963332 Total Pages:  36

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**